UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRED JEDLISKA, as parent and guardian of
D.J., a minor,

        Plaintiff,

  v.

BRAD SNOW,

        Defendant.

Case No. 23-cv-1202-JPG

### MEMORANDUM AND ORDER

This matter comes before the Court on defendant Brad Snow's motion to dismiss plaintiff Fred Jedliska's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 22). Jedliska has responded to the motion (Doc. 24).

This case arises out of a February 21, 2023, search of Jedliska's son D.J., a middle school student at Collinsville Middle School, where Snow is the principal. With police officers present, Principal Snow searched D.J.'s person and his bookbag but found no contraband. Jedliska claims the search was without reasonable suspicion, was not reasonable in scope, and was therefore in violation of D.J.'s Fourth Amendment rights. For the following reasons, the Court does not decide the substantive question but finds that Principal Snow is entitled to qualified immunity because it was not clearly established at the time that his conduct was unconstitutional.

### I.   Standard for Dismissal

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,*  556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777.  Now "it is not enough for a complaint to avoid foreclosing possible bases for relief;  it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).  A complaint still need not contain detailed factual allegations. *Bell Atl.*, 550 U.S. at 555.  Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555.  If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal.  *Airborne Beepers*, 499 F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77 (noting absence of facts plausibly suggesting causation).

**II.    Facts**

Accepting all well-pleaded facts as true, and drawing all reasonable inferences in the plaintiff's favor, the allegations in the Amended Complaint establish the following relevant facts.

Jedliska's child D.J. was a student at Collinsville Middle School.  On February 21, 2023, D.J. either gave another student or received from another student about $10.00 in cash.  The money was to reimburse the cost of going to a skate park the week before.  The exchange had no connection to drugs or weapons.  The money was transferred on school premises but not in a classroom during a class.  Both students went to class after the transfer.

Later that day, a school representative came to D.J.'s class, removed him from the class, and asked him to come with the representative without putting his hands in his pockets.  D.J. was instructed to clean out his locker and go to the office of Principal Snow, where Principal Snow and a Collinsville Police Officer were waiting for him.  In his office, Principal Snow searched D.J.'s bookbag and used a metal detector wand to search his person, but he did not touch D.J.  He also asked D.J. to take his shoes off so they could be searched.  The searches yielded no contraband, D.J. was allowed to return to his class, and he was not disciplined in any way.

Less than a week after the incident in question, the plaintiff filed this lawsuit in state court on behalf of D.J. against Principal Snow alleging that the foregoing searches violated D.J.'s Fourth Amendment rights, incorporated to apply by the Fourteenth Amendment Due Process

3

Clause.[1]  He claims that D.J. was also injured because he was embarrassed and humiliated by being removed from the classroom in front of his classmates.  Recognizing a federal question would give this Court original jurisdiction under 28 U.S.C. § 1331, Principal Snow removed the case in April 2023, and the plaintiff filed the Amended Complaint a month later.

Principal Snow now asks the Court to dismiss this case on two grounds.  The first is that he had reasonable suspicion based on the transfer of cash to conduct a limited search and that the search was reasonable in scope.  His second argument for dismissal is that he is entitled to qualified immunity.  The plaintiff contends that Principal Snow has embellished the facts with allegations not pled in the complaint, that the search was not justified from its inception, and that Principal Snow is not entitled to qualified immunity.  To alleviate the plaintiff's fear of the extra facts, the Court sticks closely to the facts pled in the Amended Complaint.

**III.     Analysis**

    A.     <u>Constitutionality of the Search</u>

The plaintiff brings his claim under 42 U.S.C. § 1983 for violation of D.J.'s Fourth Amendment rights.  The Fourth Amendment to the Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."  U.S. Const. amend. IV.

The contours of this right in the public school context were first set forth by the Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325 (1985).  That case involved two sequential searches

---

[1] No reasonable reading of the Amended Complaint could reveal the involvement of the Fourteenth Amendment other than as a vehicle to apply the Fourth Amendment to the states and their creations.

of a student who had been observed smoking in the school bathroom. *Id.* at 328. Based on this information, the assistant vice principal searched the student's purse and found cigarettes and, ultimately after a more thorough search, illegal drugs and evidence of drug dealing. *Id.* The state brought delinquency charges against the student, and the court declined to suppress the fruits of the searches. *Id.* at 329. The student was adjudged delinquent. *Id.* at 330. The case wended its way through the state court system to the Supreme Court, which held that the search was reasonable, and set forth guiding principles and a legal framework for analyzing searches by public school officials.

The *T.L.O.* Court first confirmed that the Fourth Amendment reasonableness requirement applied in this context. *Id.* at 333-34. But what is reasonable must balance a student's legitimate, albeit reduced, interest in privacy at school against the school's interest in maintaining security and order, which often requires immediate action. *Id.* at 339-40. The Court struck that balance by setting up a two-pronged inquiry. First, was the search justified at its inception, that is, were there reasonable grounds for suspecting that the search would yield evidence of a rule or law violation? *Id.* at 341-42. "[A] search is warranted only if the student's conduct creates a reasonable suspicion that a particular regulation or law has been violated, with the search serving to produce evidence of that violation." *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993). Second, was the search reasonably related in scope to the circumstances, that is, were " the measures adopted . . . reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction"? *T.L.O.*, 469 U.S. at 341-42.

In adopting this test, the Supreme Court observed:

By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the

> niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common sense.  At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools.

*Id*. at 342.  As noted above, under this standard, the Supreme Court found the searches in issue complied with the Fourth Amendment reasonableness requirement.  *Id.* at 347-48.

The Supreme Court applied the *T.L.O.* test more recently in *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364, 370 (2009).  There, suspecting a student possessed prescription drugs and over-the-counter medications that were forbidden at school, a principal searched a student's possessions.  *Id.* at 368.  He found no contraband, so he ordered a school nurse to search the student's clothing, including her undergarments.  *Id.* at 369.  The nurse made the student disrobe down to her undergarments, and then pull them away from her body to show she was hiding nothing.  *Id.*  Again, the search yielded no contraband.  *Id.*  The student sued for a Fourth Amendment violation.

Applying the *T.L.O.* test, the Supreme Court concluded that the search of the student's possessions and outer clothing was justified by the principal's suspicions.  *Id.* at 373-74.  Regarding the scope of that search, it stated:

> If a student is reasonably suspected of giving out contraband pills, she is reasonably suspected of carrying them on her person and in the carryall that has become an item of student uniform in most places today.  If [the principal's] reasonable suspicion of pill distribution were not understood to support searches of outer clothes and backpack, it would not justify any search worth making.

*Id.*

The effective strip search of the student was another story.  The *Safford* Court found the strip search did not pass muster under the second *T.L.O.* prong.  *Id.* at 375.  The search was excessively intrusive in light of the age and sex of the student, the relatively harmless nature of the drugs she was suspected of possessing, and the lack of any evidence she possessed

6

contraband at that moment. *Id.* at 375-77.

As for the case at bar, Principal Snow's search, as described in the Amended Complaint, likely passes the second *T.L.O.* factor: it was reasonably related in scope to locate contraband and was not excessively intrusive. It was conducted in private in the Principal's office with a police officer present and no one touched D.J.'s person. The search of his bookbag and his shoes are like the searches for contraband found reasonable in *Saffold*. The manner of the search is not the problem.

If there is any problem—and the Court is not saying there is—it is with the first *T.L.O.* factor: whether a student's giving money to another student alone creates a reasonable suspicion of activity against a particular law or school rule, likely selling something that is contraband in the school. The Court imagines this involves consideration of many factors not pled in the complaint and unique to the particular students, principal, and school in question. *See Cornfield*, 991 F.2d 1316, 1323 (7th Cir. 1993) (multiple individualized factors that led to reasonable suspicion); *A.S. v. Florida*, 693 So. 2d 1095, 1096 (Dist. Ct. App. 1997) (giving examples of factors that can be considered). For example, what is D.J.'s or the other student's history of rule or law violations? What is the nature and magnitude of the drug or weapon problem at the school? What characteristics of this particular money transfer made it seem suspicious? Depending on the answers to these and other questions, the search could have been justified at its inception, but it did not have to be. But the Court must focus now only on what is pled in the Amended Complaint—the simple transfer of cash from one student to another. The Court need not decide whether these facts plausibly suggest the search was not justified because Principal Snow is entitled to qualified immunity.

B.     Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A school official searching a student is 'entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment.'" *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) (quoting *Pearson,* 555 U.S. 243-44).

For qualified immunity to apply, the Court must find that the right was sufficiently clear at the time of the violation that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (*per curiam*); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The inquiry must be made focusing on the specific context of the case, not at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "[T]he clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* at 552 (quoting *Anderson*, 483 U.S. at 639, 640; internal citations omitted).

Nevertheless, if there is no case addressing the exact conduct in question but the conduct is so outrageous that it is obviously unconstitutional, or even just clear enough to put an official on notice that their conduct violates the law, qualified immunity will not apply. *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (*per curiam*) (obvious that housing prisoner in feces-filled or freezing cell without clothes or a toilet violated the Eighth Amendment) (citing *Hope v. Pelzer*,

536 U.S. 730, 739 (2002)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011).

The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend suggesting recognition of the right is inevitable. *Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017). "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001).

The plaintiff has not pointed to any case from the Supreme Court or Seventh Circuit Court of Appeals with facts similar to those pled in the Amended Complaint in the case at bar.[2] Nor has he described a clear trend of cases from other jurisdictions showing it was inevitable to recognize that the search involved in this case was unconstitutional. Instead, he cites two state court cases from decades ago: *A.S. v. Florida*, 693 So. 2d 1095 (Fla. Dist. Ct. App. 1997), and *In re J.A.*, 85 Ill. App. 3d 567 (5th Dist. 1980). These cases, even if they were on all fours with the facts in the instant case, do not represent a "clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of

---

[2] The Court has reviewed every Supreme Court and Seventh Circuit Court of Appeals case citing *T.L.O.*—there could hardly be a public school search case in the last nearly forty years that does not cite *T.L.O.*—and has found no case even remotely presenting facts similar to those in this case.

time." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) (internal citations omitted). Granted, those cases may be persuasive as to whether the search was justified. However, they are not enough to put a reasonable principal on notice that it was unconstitutional to conduct a search like the one approved in *Safford* after a student gives money to another student during school. Nor has the plaintiff pointed to anything so outrageous or egregious that any reasonable principal would have known it was unconstitutional.

The plaintiff has simply not shown that the law was clearly established such that a reasonable principal had fair warning that a relatively brief, non-invasive search of D.J. based on a report of a monetary exchange between students was unconstitutional. Principal Snow is entitled to qualified immunity.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Principal Snow's motion to dismiss (Doc. 22) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  July 21, 2023**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**